IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOHN G. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | 4:12CV3001 |
| | ) | |
| v. | ) | |
| | ) | |
| EARTH SOUND, INC., a Nebraska | ) | MEMORANDUM AND ORDER ON |
| Corporation, KENNY ENERGY, | ) | MOTIONS FOR PARTIAL |
| L.L.C., a Nebraska Limited Liability | ) | SUMMARY JUDGMENT |
| Company, and JAMES KENNY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

On August 17, 2012, John G. Brown (Brown) filed a four-count amended complaint against Earth Sound, Inc. (Earth Sound), Kenny Energy, L.L.C. (Kenny Energy), and James Kenny (Kenny) (collectively, "the defendants"). (See Am. Compl., ECF No. 32.) Now before me are the defendants' motion for partial summary judgment on Count III of the amended complaint, (ECF No. 49), and Brown's motion for partial summary judgment on Counts I, II, and IV of the amended complaint, (ECF No. 59). My analysis of these motions follows.

### I.  BACKGROUND[1]

---

[1] The facts summarized below are taken from the Defendants' Statement of Undisputed Facts, (see Defs.' Br. at 2-4, ECF No. 50), the Plaintiff's Statement of Undisputed Facts, (see Pl.'s Br. at 1-4, ECF No. 60), and the parties' responses to their opponents' statements of undisputed facts, (see Pl.'s Response Br. at 1-3, ECF No. 55; Defs.' Response Br. at 2-12, ECF No. 67).

From October 2002 to December 2005, Brown worked for Gore Oil Company (Gore) as a Pumper. (Pl.'s Br., Statement of Undisputed Facts (hereinafter "Pl.'s Facts") ¶ 1, ECF No. 60.) Gore paid Brown approximately $16 per hour for the first forty hours he worked each week, plus "time and half" for each hour thereafter. (Id. ¶ 2.) Brown's work week "was five (5) days on with two (2) days off," (id.), and he received benefits such as health insurance, profit sharing, mileage, fuel, and three weeks of paid vacation, (id. ¶ 3.)

Brown left Gore in December 2005 and "entered into an oral employment contract" with the defendants in January 2006. (Pl.'s Facts ¶¶ 1, 6, ECF No. 60; see also Defs.' Br., Statement of Undisputed Facts (hereinafter "Defs.'Facts") ¶ 2, ECF No. 50.) The events surrounding Brown's hiring by the defendants and the terms of the parties' employment contract are in dispute. According to Brown, the defendants "induced" him to leave Gore by offering him "a similar position as a Production Foreman Pumper" at "a higher wage rate." (Pl.'s Facts ¶ 4, ECF No. 60 (citing Pl.'s Index, Brown Aff. ¶ 4, ECF No. 61-1).) Brown states that he told Kenny[2] that he "would not move laterally to a new job that required more hours and reduced his time off or vacation time," (id. ¶ 5 (citing Brown Aff. ¶ 4, ECF No. 61-1)), and Kenny responded by offering Brown a position working "the same type [of] schedule [that he] had with Gore: 5 days on and 2 days off with overtime over 8 hours," (Brown Aff. ¶ 4, ECF No. 61-1). Brown also states that Kenny offered him paid vacation time and an annual salary of $60,000. (Id.)

---

[2] Kenny was the president of Earth Sound and the managing partner of Kenny Energy. (Defs.' Index, Ex. 1, Kenny Aff. ¶¶ 3-4, ECF No. 51.)

According to Kenny, the defendants offered Brown a position after he expressed "dissatisfaction" with Gore. (Defs.' Response Br., Defs.' Response to Pl.'s Statement of Undisputed Material Facts (hereinafter Defs.' Response to Pl.'s Facts) ¶ 4, ECF No. 67 (citing Defs.' Index, Ex. 1, Kenny Aff. ¶ 13, ECF No. 68-1).) Kenny agrees that the defendants offered Brown a $60,000 annual salary, but he claims that this salary "was to cover all hours worked by [Brown] in performing his duties." (Id. ¶ 4 (citing Kenny Aff. ¶ 6, ECF No. 68-1).) Kenny states that he never promised Brown "that he would be working five days a week, with two days off," and he never promised Brown that he "would receive paid vacation time." (Id. (citing Kenny Aff. ¶ 6, ECF No. 68-1).) In addition, Kenny states that the defendants never agreed to pay Brown "overtime" for work in excess of 40 hours per week. (Id. ¶¶ 4-5. See also Kenny Aff. ¶ 16, ECF No. 68-1 ("At no time prior to, or during his employment, did [Brown] ever mention or request 5 days on and 2 days off with overtime pay.").) Kenny does state, however, that Brown was "offered an initial [payment of] $5,000, health insurance, [a] 401(k) plan, and an automobile with all associated expenditures (i.e., fuel, repairs, etc.)." (Defs.' Response to Pl.'s Facts ¶ 4, ECF No. 67 (citing Kenny Aff. ¶ 13, ECF No. 68-1).) Kenny also states that Brown "was never denied time off when he requested it for any reason." (Id. ¶ 19.)

Brown claims that as a "further inducement to leave his employment with Gore, Defendants offered [Brown] a twenty-five percent (25%) working interest in an oil and gas lease." (Pl.'s Facts ¶ 22, ECF No. 60.) Kenny claims, however, that the working interest in the lease, which he calls "the Trail Well," was transferred to Brown more than one month after his hiring date "to give him more money to contribute to his 401(k) plan." (Defs.' Response to Pl.'s Facts ¶ 22, ECF No. 67.) Kenny also states that "the working interest in the Trail Well . . . [was] to conclude

with the termination of [Brown's] employment." (Kenny Aff. ¶ 15, ECF No. 68-1.)

Brown worked for Kenny Energy as a Production Foreman Pumper from January 2006 to April 15, 2009. (Defs.' Facts ¶ 2, ECF No. 50; Pl.'s Statement of Undisputed Facts (hereinafter Pl.'s Response to Defs.' Facts) ¶ 17, ECF No. 55; Pl.'s Facts ¶ 7, ECF No. 60.) During his employment, Brown "physically repair[ed] units, gauged tanks, checked wells, greased units, tested barrels, . . . operated a backhoe, performed roustabout work, cleaned the site for oil and gas commission inspections, and logged production." (Pl.'s Response to Defs.' Facts ¶ 17, ECF No. 55.) He also "occasionally directed the work of two other employees." (Id. ¶ 18 (citing Kenny Aff. ¶ 10, ECF No. 51). See also id. ¶ 9 ("Plaintiff's 'supervision' of employees solely consisted of explaining job assignments to roustabout crews and at times, pulling units.").) The defendants claim that Brown "was relatively free from direct supervision." (Defs.' Facts ¶ 7, ECF No. 50.) Brown claims, however, that his "interaction with his supervisor ranged from several times a day to once a week depending on the job and production," and his work "was assigned and guided by Defendants." (Pl.'s Response to Defs.' Facts ¶ 7, ECF No. 55.) Brown also states that although he completed high school and "has attended some undergraduate college course[s], there is no evidence that [he] engaged in [a] prolonged course of specialized intellectual instruction to learn the skills necessary to perform his job duties." (Pl.'s Response to Defs.' Facts ¶¶ 15-16, ECF No. 55.)

Initially, Brown's salary was $60,000 per year. (Pl.'s Facts ¶ 8, ECF No. 60.) From January 1, 2008, to April 15, 2009, his salary was $63,000 per year. (Defs.' Response to Pl.'s Facts ¶ 8, ECF No. 67.) Brown's pay was higher than that of "the hourly employees whom he oversaw." (Defs.' Facts ¶ 7, ECF No. 50.) Also, Brown states that throughout his time of employment, he "received his percentage interest

in the gross production of oil" from the Trail Well. (Pl.'s Facts ¶ 23, ECF No. 60.) He adds that "as per the assignment agreement, Defendants paid all associated expenses with the oil well." (Id.) Kenny states, however, that Brown agreed to "pay his proportionate share" of the costs for repairs that were made to the Trail Well shortly before the termination of Brown's employment. (Defs.' Response to Pl.'s Facts ¶ 23, ECF No. 67.) Although other "working interest owners" paid their proportionate share of the costs, Brown "has not paid any of the expenses on the Trail Well to date." (Id.)

The defendants claim that Brown's "suggestions and recommendations as to the firing or advancement of employees [were] given particular weight." (Defs.' Facts ¶ 8, ECF No. 50.) In response, Brown claims that he "did not have the authority to discipline, hire, fire, [or] award bonus pay or wage increases," and he "did not . . . advise Defendants on disciplin[ing], hiring, firing or awarding wage increases to any person or employee." (Pl.'s Response to Defs.' Facts ¶ 8, ECF No. 55.)

Brown kept daily journals "to provide a history on each [work] site in the event of problems." (Pl.'s Facts ¶ 11, ECF No. 60.) Although these journals do not record "the number of hours [that Brown] worked on any given day," Brown has used the journals to identify the days that he "actually worked." (Brown Aff. ¶ 12, ECF No. 61-1.) He adds that he "know[s] for certain that [he] worked a minimum of ten (10) hours each day [that he] was employed by the Defendant[s]." (Id.) Using his memory and his journals, Brown has calculated the "minimum" number of hours that he worked for the defendants. (See id. ¶¶ 11-14). Specifically, Brown states that in 2006, he worked ten hours per day on 365 days, for a total of 3650 hours. (Pl.'s Facts ¶ 15, ECF No. 60.) He states that in 2007, he again worked ten hours per day on 365 days, for a total of 3650 hours. (Id.) He states that in 2008, he worked ten hours per

5

day on 362 days, for a total of 3620 hours. (Id. ¶ 16.) Finally, he states that in 2009, he worked ten hours per day on 99 days, for a total of 990 hours. (Id. ¶ 17.) Brown claims that based on these figures, he is entitled to be paid for 1560 hours overtime in 2006, 1560 hours overtime in 2007, 1530 hours overtime in 2008, and 430 hours overtime in 2009. (Id. ¶¶ 15-18.) He also claims that he did not take vacation time while employed by the defendants, and therefore he is entitled to be "paid for his unused vacation time at the time of separation with Defendants." (Id. ¶¶ 19-20.) Brown adds that he told the defendants that he was working overtime hours, and he requested additional help on "multiple occasions." (Id. ¶ 12.) Although the defendants assured him "that additional help would be hired so [Brown's] work hours would be reduced," they never provided this help. (Id. ¶ 13.)

Kenny states that Brown never mentioned that he worked so many hours or that he expected to receive overtime pay, and the parties never agreed that Brown would be paid for overtime work or for unused vacation time. (Defs.' Response to Pl.'s Facts ¶¶ 10, 12, 18, 20, ECF No. 67 (citing Kenny Aff. ¶¶ 6, 10, 27, ECF No. 68-1).) Kenny also states that he never denied Brown's requests for time off or for help; that Nolan Brown, who was Brown's son, worked as Brown's relief pumper when Brown requested time off; and that Brown not only refused additional help, but would "get upset if anyone else was out checking the wells besides [Brown] or his son." (Id. ¶¶ 12-13, 19.) Moreover, Kenny claims that Dustin Morris (who was hired to replace Brown), Nolan, and Kenny himself were all able to perform Brown's duties in only five hours per day. (Id. ¶ 10 (citing, inter alia, Kenny Aff. ¶ 8, ECF No. 68-1).) Kenny states that Brown "could not have worked all the hours he claims," adding that Brown's journals fail to document Brown's use of paid leave for medical appointments, a hospital stay and recovery time, family visits, funerals, weddings, and

other purposes. (Id. ¶¶ 10, 11, 15, 19.) Kenny adds that Nolan's time sheets demonstrate that Brown took time off and that Nolan spent time working in Brown's relief. (Id. ¶ 19.)

Brown claims that he "has not received his royalty payments" from the Trail Well since the termination of his employment with the defendants. (Pl.'s Facts ¶ 25, ECF No. 60.) The defendants counter that the payments "are not 'royalty payments'"; that "[t]he only one receiving royalty payments is the 'mineral' interest owner"; and that Brown "received a 'working' interest in the Trail Well." (Defs.' Response to Pl.'s Facts ¶ 25, ECF No. 67.) Kenny also states that at the time of his termination, Brown "refused [Kenny's] request per [the] oral agreement to assign the Trail Well back over to Earth Sound, Inc." (Kenny Aff. ¶ 22, ECF No. 68-1.)

Brown filed a five-count complaint against the defendants in the District Court of Red Willow County, Nebraska, on June 9, 2011. (See generally Notice of Removal, Ex. A, Compl., ECF No. 1.) In Count I, Brown alleged that after the defendants terminated his employment, they "wrongfully and unlawfully" made charges against Brown's interest in the Trail Well, "and when those [charges] were unpaid, [the defendants] informed the purchaser of the oil . . . to suspend all payments to [Brown]." (See id. at 1-3.) In Count II, Brown alleged that he is entitled to $8,166.83, plus interest, "for unused vacation time" that "was due and owing upon the severance of [Brown's] employment." (Id. at 3.) In Count III, Brown alleged that he suffered a work-related injury and "was required to expend $3,144.59 in payments for his medical treatment," but the defendants should have made these payments "pursuant to [the] Nebraska Worker's Compensation Act." (Id. at 4.) In Count IV, Brown alleged that the defendants owe him $114,925.12 in overtime pay "as required by the Fair Labor Standards Act [(FLSA)]." (See id.) Finally, in Count V, Brown

alleged that because "[t]he Causes of Action set forth above relate to an employee suit to obtain payment for unpaid wages and other benefits as provided in the [Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. §§ 48-1228-1232]," he "is entitled to payment of attorney's fees." (Id. at 5.)

On January 3, 2012, the defendants removed the action to this court, (see generally Notice of Removal, ECF No. 1), and on January 9, 2012, the defendants filed a motion to dismiss Count III pursuant to Federal Rule of Civil Procedure 12(b)(1). (See Defs.' Mot. to Dismiss, ECF No. 6.) I granted the defendants' motion on February 21, 2012. (See Mem. & Order, ECF No. 10.)

On August 17, 2012, Brown filed a four-count amended complaint against the defendants. (See generally Am. Compl., ECF No. 32.) Count I, which is titled "Breach of Contract," alleges that the defendants offered Brown a "working interest" in the Trail Well, but agreed that Brown "would not be charged with any of the expenses of production . . . and that [Brown] would receive his interest in the gross production of oil" from the well. (Id. ¶ 6.) It alleges further that Brown received "his percentage interest in the gross production throughout the term of his employment," but after his termination the defendants wrongfully made charges against Brown's interest and directed the purchaser of the oil from the Trail Well to suspend payments to Brown. (Id.)

Count II, which is also titled "Breach of Contract," alleges that at the time of his termination, Brown "was entitled to payment for unused vacation time" in the amount of $8,166.83, plus interest. (Id. ¶¶ 8-9.)

Count III, which is titled "Violation of FLSA," alleges that Brown "consistently and routinely worked in excess of 40 hours per week, but was not paid any overtime for those hours." (Id. ¶ 14. See also id. ¶¶ 10-18.) It alleges further

8

that because the defendants' failure to pay Brown overtime "was a willful violation of the FLSA," Brown "is entitled to overtime compensation for the immediate three years preceding the time of filing the Complaint." (Id. ¶¶ 15-16.)

Count IV, which is titled "Violation of NWPCA," alleges that the defendants failed to pay Brown "for overtime hours worked during his employment from 2006 into 2009" in violation of the Nebraska Wage Payment and Collection Act. (Id. ¶ 22. See also id. ¶¶ 19-24.)

As noted previously, the defendants have moved for partial summary judgment on Count III of the amended complaint, (ECF No. 49), and Brown has moved for partial summary judgment on Counts I, II, and IV of the amended complaint, (ECF No. 59).

## II. STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. A "material" fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). See also Jones v. Minnesota Dept. of Corrections, 512 F.3d 478, 481 (8th Cir. 2008). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party, Adickes v. S. H. Kress &

Co., 398 U.S. 144, 157 (1970), and the court must not weigh evidence or make credibility determinations, Anderson, 477 U.S. at 249.

It is the moving party's burden to establish that no genuine issue of material fact exists. Fed. R. Civ. P. 56(a); Adickes, 398 U.S. at 157. Therefore, if the moving party does not meet its initial burden, summary judgment must be denied even if no affidavits or other evidence have been submitted in opposition to the motion. See Adickes, 398 U.S. at 159-60. When the nonmoving party bears the burden of proof on a particular issue at trial, however, the moving party may be able to discharge its initial burden merely by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). After the moving party has met its burden, "the non-moving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." Singletary v. Missouri Dept. of Corrections, 423 F.3d 886, 890 (8th Cir. 2005).

"[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." Wermager v. Cormorant Township Board, 716 F.2d 1211, 1214 (8th Cir. 1983) (citations omitted). Thus, if the materials submitted by the parties support conflicting inferences with respect to any material fact, summary judgment is not appropriate. See id.

### III. ANALYSIS

**A. The Defendants' Motion for Partial Summary Judgment on Count III**

The defendants argue that because Brown has failed to come forward with "evidence upon which a reasonable jury could find that Defendants knowingly or

10

recklessly violated the FLSA," I must "dismiss with prejudice all FLSA claims based upon alleged violations which occurred more than two years before [Brown] filed his complaint." (Defs.' Br. at 2, ECF No. 50.)

"The FLSA prohibits the employment of any person 'for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.'" Lopez v. Tyson Foods, Inc., 690 F.3d 869, 874 (8th Cir. 2012) (quoting 29 U.S.C. § 207(a)(1)). It includes a two-year statute of limitations "to enforce any cause of action for . . . unpaid overtime compensation," "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). To prove that an employer's violation was willful, and thereby trigger the three-year statute of limitations, a plaintiff must show "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988) (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111 (1985)); see also id. at 135 ("Ordinary violations of the FLSA are subject to the general 2-year statute of limitations. To obtain the benefit of the 3-year exception, the Secretary must prove that the employer's conduct was willful as that term is defined in both Thurston and this opinion."). The three-year statute of limitations is not applicable if the employer is merely negligent. Id. at 133. Thus, it is not sufficient if the plaintiff merely shows that "employer knew that the FLSA 'was in the picture,'" id. at 132-33, or that the employer "acted without a reasonable basis for believing that it was complying with the statute," id. at 134.

The record before me cannot support a reasonable finding that the defendants knowingly or recklessly violated the FLSA. Therefore, I find that the two-year statute of limitations applies, and the defendants are entitled to summary judgment to the extent that Count III is based on alleged violations of the FLSA that occurred more than two years before June 9, 2011, which is the date of the filing of Brown's original complaint.

In opposition to the defendants' motion for partial summary judgment, Brown argues that he worked ten hours per day, seven days per week while he was employed by the defendants; that he "specifically informed Defendants of the [number] of hours he spent working"; that he "requested additional help from Defendants because of the amount of overtime Defendants' work assignment[s] required of [him]"; and that although the defendants assured him that additional help would be hired, they never "provide[d] the additional promised help." (Pl.'s Response Br. at 5-6, ECF No. 55.) He submits that because the defendants "had specific knowledge" of the foregoing facts, including the number of hours that Brown was working, the defendants demonstrated "at a minimum reckless indifference" to Brown's "federally protected right to receive overtime wages." (Id. at 6-7.)

I agree that when the evidence is taken in the light most favorable to Brown, the record shows that the defendants knew that Brown was working more than forty hours per week, but they did not pay him overtime for the excess hours. Based on this evidence, a reasonable trier of fact might find that the defendants could not have reasonably believed that they were complying with the FLSA. In other words, Brown's evidence might, if credited, establish an "ordinary violation" of the FLSA. McLaughlin, 486 U.S. at 133-35. The evidence is not sufficient, however, to support a finding that the defendants "knew or showed reckless disregard for the matter of

whether" their conduct violated the FLSA. Id. at 133. See also id. at 134-35 (rejecting the argument that a violation of the FLSA is willful if the employer merely acted without a reasonable basis for believing that it was complying with the statute). Cf. Reedy v. Rock-Tenn Co. of Arkansas, No. 4:08CV413, 2009 WL 1855544, at *9 (W.D. Ark. June 29, 2009) ("Raising concerns with management regarding her exempt status does not show that Rock-Tenn willfully disregarded the FLSA's requirements. At most, her proffered evidence shows only that Rock-Tenn cold not have reasonably believed that it was complying with the FLSA, but lack of reasonable belief is insufficient to show willfulness." (citing McLaughlin, 486 U.S. at 133, 134)).

Brown also emphasizes that he did not become aware of his right to receive overtime wages "until he consulted an attorney in 2011." (Pl.'s Response Br. at 6, ECF No. 55. See also id. at 7.) I fail to see how Brown's lack of knowledge of the FLSA's overtime provisions establishes that the defendants wilfully violated the statute.

Because no reasonable factfinder could conclude, based on the evidence now before me, that the defendants wilfully violated the FLSA, I find that the two-year statute of limitations applies to Brown's claim for overtime compensation, and the defendants are entitled to summary judgment on Count III insofar as Brown seeks to recover overtime compensation beyond the FLSA's two-year limitations period.[3]

---

[3] The defendants also argue that their "failure to pay [Brown] overtime cannot possibly be called a 'reckless' or 'knowing' violation of the FLSA" because Brown's "employment duties were at least sufficiently close to those prescribed for the executive exemption in 29 C.F.R. § 541.100(a)(1)-(4)." (Defs.' Br. at 13, ECF No. 50.) I need not address this argument because Brown has failed to come forward with evidence sufficient to support a reasonable finding

B.   The Plaintiff's Motion for Partial Summary Judgment on Count I

Brown argues that he is entitled to partial summary judgment on Count I because the evidence shows that he owns a 25% interest in the Trail Well "without any obligation to make expense payments to Defendants," and the defendants "wrongfully interfered with [his] contractual right to receive royalty payments." (Pl.'s Br. at 13, ECF No. 60.)

"A party seeking to enforce a contract has the burden of establishing the existence of a valid, legally enforceable contract." Hoeft v. Five Points Bank, 539 N.W.2d 637, 344 (Neb. 1995) (citing Sayer v. Bowley, 503 N.W.2d 166 (Neb. 1993)). "That party must show that there was a definite offer and an unconditional acceptance with nothing left open for future arrangement." Id. (citing Sayer, 503 N.W.2d 166). "There must also be a meeting of the minds or a binding mutual understanding between the parties to the contract." Id. (quoting Lindsay Ins. Agency v. Mead, 508 N.W.2d 820, 825 (Neb. 1993)) (alteration brackets omitted). "Where evidence as to the terms of an oral contract is conflicting, it is for the jury to pass upon the facts and determine the terms of the contract." Gerdes v. Klindt, 570 N.W.2d 336, 343 (Neb.

---

that the defendants wilfully violated the FLSA. Nevertheless, it merits mention that I have reviewed the parties' evidence and arguments on this point, and I find that there is a genuine dispute as to whether Brown was "sufficiently close" to qualifying for the FLSA's executive exemption. See 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.100(a). (Compare Defs.' Br. at 10-13, ECF No. 50, with Pl.'s Response Br. at 7-12, ECF No. 55. See also supra Part I (summarizing the parties' evidence on the question of whether Brown qualified for the executive exemption).) Indeed, taking the evidence in the light most favorable to the plaintiff, I find that the defendants could not have reasonably believed that the executive exemption applied to Brown. As I noted previously, however, this finding is not sufficient to trigger the three-year statute of limitations. See McLaughlin, 486 U.S. at 133-35; Reedy, 2009 WL 1855544, at *9.

1997) (citing Edward Peterson Co. v. Ulysses S. Schlueter Construction Co., 140 N.W.2d 830 (Neb. 1966)).

The record includes no evidence of a written contract stating that Brown was (or was not) responsible for paying expenses associated with the Trail Well. (See, e.g., Pl.'s Br. at 13, ECF No. 60 ("[T]he parties never executed a Unit Operating Agreement, an industry standard contract that establishes the rights and obligations of the owners [of working interest leases].").) Nor does the record include evidence of a written contract stating whether or not Brown was obligated to transfer his interest in the Trail Well back to the defendants upon the termination of his employment. Thus, to establish that he is entitled to summary judgment on Count I, Brown must show that there is no genuine dispute that the defendants violated the terms of an oral contract.

Brown claims that in order to induce him to leave his employment with Gore, the defendants offered him a 25% working interest in the Trail Well "on the express understanding that said interest, though labeled a working interest, would not be charged with any production expenses that are typically associated with working interests." (Pl.'s Br. at 12-13, ECF No. 60 (citing Brown Aff. ¶ 17, ECF No. 61-1).) He also claims that the defendants' course of conduct throughout the term of his employment shows that Brown had the right to receive "his percentage interest in the gross production of oil" and that the defendants would pay "all associated expenses with the oil well." (Id. at 13 (citing Brown Aff. ¶ 17, ECF No. 61-1).) Brown adds that the defendants never made any demand that Brown pay "expenses on the well" until after his employment was terminated, and when Brown "rightfully denied" the defendants' request for expenses, the defendants "wrongfully and unlawfully

15

interfered with [his] right to receive royalty payments" by directing the buyer of the oil to suspend all payments to Brown. (Id. (citing Brown Aff. ¶ 17, ECF No. 61-1).)

The defendants claim, however, that they assigned the working interest to Brown "to give [him] supplemental contributions toward his 401(k) plan," and although the parties agreed that Brown's working interest would "conclude with the termination of [his] employment," Brown has refused the defendants' request to transfer the working interest back to Earth Sound. (Defs.' Response Br. at 20, ECF No. 67 (citing, inter alia, Kenny Aff. ¶¶ 14-15, ECF No. 68-1). See also id. at 21-22.) The defendants also claim that because Brown held a "working interest" assignment, and in accordance with "the terms of the oral contract between the parties, [Brown] was responsible for paying any and all expenses associated with the production of [Brown's] share of the Trail Well." (Id. at 23 (citing Kenny Aff. ¶¶ 24-25, ECF No. 68-1).) The defendants add that Brown specifically told Kenny that he would pay his share of certain repair costs, but he has failed to do so. (Id. at 21-23 (citing, inter alia, Kenny Aff. ¶¶ 24, ECF No. 68-1).) Finally, the defendants note that other owners of working interests in the Trail Well have "paid their proportionate share of expenditures on this well," but Brown "has failed to pay anything toward his share." (Id. at 22 (citing Kenny Aff. ¶ 25, ECF No. 68-1).)

The parties have submitted affidavits and other materials in support of their conflicting positions, and after studying the record, I find that the terms of their contract are genuinely in dispute. Summary judgment is not appropriate under these circumstances. See Gerdes, 570 N.W.2d at 343.

**C.     The Plaintiff's Motion for Partial Summary Judgment on Count II**

Brown argues that he is entitled to summary judgment on Count II because he "was contractually promised . . . three (3) weeks paid vacation annually," and the

defendants never compensated him for his unused vacation time. (Pl.'s Br. at 12, ECF No. 60.)

The parties have submitted conflicting evidence on the issue of whether Brown was entitled to paid vacation time under the terms of the parties' oral employment contract. (Compare Brown Aff. ¶¶ 4, 16, ECF No. 61-1, with Kenny Aff. ¶¶ 6, ECF No. 68-1.) The trier of fact must "determine the terms of the contract," Gerdes, 570 N.W.2d at 343, and I find that Brown is not entitled to summary judgment on Count II.

**D.    The Plaintiff's Motion for Partial Summary Judgment on Count IV**

Finally, Brown argues that he is entitled to summary judgment on his claim for unpaid wages under the Nebraska Wage Payment and Collection Act (NWPCA).

"The NWPCA allows an employee having a claim for wages which are not paid within 30 days of the regular payday to recover the unpaid wages through the courts." Eikmeier v. City of Omaha, 783 N.W.2d 795, 798 (Neb. 2010) (citing Neb. Rev. Stat. § 48-1231). "If the employee is successful, he or she is entitled to recover attorney fees in an amount no less than 25 percent of the unpaid wages." Id. (citing Neb. Rev. Stat. § 48-1231). The statute defines "wages" as "compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis." Id. (quoting Neb. Rev. Stat. § 48-1229(4)) (emphasis added). See also id. ("When applying 48-1229, we have held that a payment will be considered a wage subject to the NWPCA if (1) it is compensation for labor or services, (2) it was previously agreed to, and (3) all the conditions stipulated have been met."). Given this definition, "overtime wages can be claimed under the act only if those overtime wages were previously agreed to by

the employer and the employee." Freeman v. Central States Health and Life Co. of Omaha, 515 N.W.2d 131, 135 (Neb. App. 1994).

Brown claims that he is entitled to payment for the time he worked in excess of forty hours per week, either at a "time and half" rate or at his "regular" wage rate, because the parties entered into an oral employment contract specifying that Brown would be paid "$5,000 per month with overtime pay." (Pl.'s Br. at 6, 8, ECF No. 60.) Although Brown has submitted evidence that the parties reached such an agreement, (see, e.g., Pl.'s Br. at 6, ECF No. 60 (citing, inter alia, Brown Aff. ¶ 4, ECF No. 61-1)), the defendants have come forward with sufficient evidence to raise a genuine dispute on this point, (see, e.g., Defs.' Response Br. at 14, 16, ECF No. 67 (citing, inter alia, Kenny Aff. ¶¶ 6, 16, ECF No. 68-1)). The parties also dispute the number of hours that Brown worked for the defendants. (Compare Pl.'s Br. at 6-8, 9, ECF No. 60 (citing, inter alia, Brown Aff. ¶¶ 9-12, 14-15, ECF No. 61-1) with Defs.' Response Br. at 14-17, ECF No. 67 (citing, inter alia, Kenny Aff. ¶¶ 7-8, 10-11, 17-21, ECF No. 68-1).) I find that genuine issues of material fact preclude entry of summary judgment on Count IV.

I note in passing that Brown argues, "Nebraska law, including the NWPCA, in its silence on the question of overtime wages defers to applicable federal law," and, "On the question of overtime wages and fixed salaries, the applicable federal law is the Fair Labor Standards Act." (Pl.'s Br. at 9, ECF No. 60.) He then states that under the FLSA, "any argument by Defendant[s] that the fixed salary paid to Plaintiff covers all hours [of] work fails." (Id. at 10.) To the extent that Brown is attempting to use the NWPCA to enforce parts of the FLSA, his arguments must be rejected. See Freeman, 515 N.W.2d at 135 ("[F]ederal courts have held that the FLSA is the

exclusive remedy for the enforcement of rights created under the FLSA. . . . [A] party cannot use the [NWPCA] to enforce rights that it may possess under the FLSA.").

**IT IS ORDERED** that:

1. The defendants' motion for partial summary judgment, ECF No. 49, is granted, and Count III is dismissed with prejudice to the extent that the plaintiff's FLSA claim is based upon actions that occurred beyond the two-year statute of limitations; and

2. The plaintiff's motion for partial summary judgment, ECF No. 59, is denied.

Dated April 16, 2013.

                BY THE COURT

                _____

                Warren K. Urbom
                United States Senior District Judge